UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

CHRISTOPHER L. SCRUGGS,

    Plaintiff,

    v.

T. CAMBE, et al.,

    Defendants.

CAUSE NO. 3:16-CV-722-PPS-MGG

OPINION AND ORDER

After discovery had begun, this case was stayed, at Christopher L. Scruggs's request, for an extended period of time. Prior to the stay, Scruggs filed a motion for leave to amend his complaint that has not yet been ruled upon. ECF 42. Now, the case has been reopened and the motion for leave to amend is ready for decision.

At this stage of the proceedings, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* "Reasons for finding that leave should not be granted include undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007) (quotations and citation omitted). This case is currently proceeding on his second amended complaint filed in April 2017. ECF 12; ECF 13.

Scruggs's initial complaint named 28 different defendants. ECF 2. It involved different incidents that took place on separate dates, and it involved different sets of operative facts. Because it contained unrelated claims, it was stricken. ECF 8. Scruggs filed an amended complaint that asserted seven different claims against 22 defendants. ECF 9. He sued Dr. Shihadeh for not treating six different health conditions since September 2015. He sued C.O. Baity and Nurse West for ignoring his request for medical assistance on May 8, 2016 at 4:30 a.m. He sued C.O. Wilson for ignoring his request for medical assistance later in the day on May 8, 2016. He sued C.O. Miller and C.O. SinClair for pepper spraying him and turning off the water in his cell on May 8, 2016. He sued eight correctional officers and two captains for denying him anything to drink for six days in May of 2016. He also sued four nurses for allegedly ignoring his pleas for medical attention from May 8 through May 13, 2016. And, he sued five correctional officers for leaving a loud exhaust fan running that created a harmful effect in his cell. While Scruggs argued that the claims were related because they all stemmed from Dr. Shihadeh's failure to treat him, the court rejected that argument, finding that the claims did not all belong in the same lawsuit. Scruggs was given a second opportunity to limit his claims only to a single set of related claims. ECF 10. He was warned that if he could not limit his claims to those that were related, the court could choose for him. *Id.* Scruggs then filed another complaint. ECF 12. This complaint was nearly identical to the second complaint except that Scruggs crossed out certain sections, reducing the number of defendants to twelve. It still contained unrelated claims. ECF 13. Because Scruggs had been given two opportunities to correct the

relatedness problem and had not done so, the court picked a claim for Scruggs: his failure to treat claim against Dr. Shihadeh. That claim was screened, and he was granted leave to proceed against Dr. Shihadeh in his individual capacity for compensatory and punitive damages for denying him adequate medical care in violation of the Eighth Amendment by failing to treat his urinary problems since December 2015. *Id.*

Approximately three months later, he filed his motion to amend. ECF 42. The motion indicates that Scruggs wants to amend to add additional medical conditions that Dr. Shihadeh did not treat. He has also included three nurses, Corizon Medical Director Monica Gipson, Corizon Medical Contractor Tony Hobbs, and Corizon Medical Company as defendants. ECF 42-1. Scruggs explains that he removed these allegations from his complaint because he thought they were what the court deemed unrelated, and he asserts that they are in fact related to the claim the court allowed to proceed. While this case has been pending for an exceedingly long time, Scruggs's motion to amend was filed early in the case. The record does not suggest bad faith or dilatory motive on the part of Scruggs. However, I will not grant Scruggs leave to file the proposed third amended complaint because it would be futile; the proposed third amended complaint does not plausibly allege any claim other than the claim on which Scruggs is already proceeding.

In the proposed third amended complaint, Scruggs alleges that, on or around September 13, 2015, Dr. Shihadeh indicated he would like to take Scruggs off the pain medication he had been taking for a back injury. Scruggs asked that the medication instead be increased. During the meeting, Scruggs indicated that his back was "'fucked'

up for real" and that the nurse who had been drawing his blood for testing was "'fucking' up" his arm. ECF 42-1 at 2. Dr. Shihadeh took offense. Scruggs told Dr. Shihadeh it was not his job to police Scruggs's language. Four and a half months later, on February 5, 2016, Scruggs was required to submit to blood work to continue receiving his pain medication. He refused because the nurse that was to draw his blood "butchers" his arm. *Id.* He asked Nurse Hutch, Nurse Jaske, and Dr. Shihadeh to draw his blood instead. They each refused. Because Scruggs did not submit to the required blood draw, his pain medication was discontinued.

Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (quotation marks and citation omitted). For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that

represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) (quotation omitted). Scruggs does not have a right to pick the medical provider of his choice, and the defendants had no constitutional obligation to accommodate his preferences. *United States v. Rovetuso*, 768 F.2d 809, 825 (7th Cir. 1985) ("The Eighth Amendment guarantees a prisoner treatment of his serious medical needs, not a doctor of his own choosing."). The proposed third amended complaint does not allege facts from which it can be plausibly inferred that Dr. Shihadeh, Nurse Jaske, or Nurse Hutch were deliberately indifferent to a serious medical need. Therefore, Scruggs has not alleged a claim against Dr. Shihadeh, Nurse Jaske, or Nurse Hutch based on the discontinuation of his pain medication after he refused to have labs drawn by the assigned staff person.

Scruggs also alleges that Dr. Shihadeh required that Scruggs submit to lab work on February 5, 2016, knowing that he would refuse to let this nurse draw his blood so that Dr. Shihadeh would have an excuse to discontinue Scruggs's pain meds – all because he cursed during a medical appointment. "To prevail on his First Amendment retaliation claim, [Scruggs] must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (quotation marks and citations omitted). Here,

Scruggs has not plead facts from which it can be plausibly inferred that his use of offensive language on September 13, 2015, had any bearing on Dr. Shihadeh's decisions regarding Mr. Scruggs's medical care four and a half months later. Thus, these allegations do not state a claim.

Scruggs also asserts that Dr. Shihadeh denied him testing for HIV. Scruggs explains that, when he was at the Reception and Diagnostic Center in 2007, he was tested for HIV and the results were negative. However, the doctor at the RDC suggested that he be retested in seven years. According to the complaint, Dr. Shihadeh did not believe that additional testing was necessary unless Scruggs has engaged in high-risk behavior while incarcerated. He asked specifically if Scruggs had sex with men, which Scruggs denied. The complaint does not indicate that Scruggs has symptoms suggesting he has HIV. The Constitution does not require that Scruggs receive the treatment of his choice or even proper treatment – only treatment that reflects professional judgment. *See Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) ("[M]edical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards.") (internal quotation marks and citation omitted). That Dr. Shihadeh disagreed with the assessment of another doctor about whether HIV testing was needed does not permit an inference that Dr. Shihadeh was not using his medical judgement. Furthermore, Scruggs has not alleged that he was suffering from any serious medical condition related to his desire to be tested for HIV. Therefore, these allegations do not state a claim.

Scruggs also believes he should have received testing for venereal diseases. He reports that he has a wart "down below." ECF 42-1 at 2. Because genital warts are sexually transmitted, Scruggs worries that he may have other venereal diseases and, if left untreated, he could get cancer. Again, the proposed third amended complaint contains no facts that would permit an inference that Dr. Shihadeh was not using his medical judgment when he determined that testing for venereal diseases was not warranted.

Scruggs also alleges that he received "no valid care if any at all" for pain in his back, leg, feet, hands, and left side, a rash, burning in his lungs and throat. He provides no further detail about these conditions, his attempt to gain treatment for them, or Dr. Shihadeh's response to his requests for treatment. The proposed third amended complaint does not establish that any of these medical complaints amounted to a serious medical condition, or that Dr. Shihadeh failed to use his medical judgment in responding to the complaints. Therefore, these allegations do not state a claim.

Scruggs believes that he was denied pain medication, HIV testing, venereal disease testing and other medical care to save Corizon money. He asserts that T. Hobbs, M. Gipson, and Boyer told Dr. Shihadeh "to try his best not to diagnose new illnesses that would be costly to treat." ECF 42-1 at 4. A private company performing a state function can be held liable to the same extent as a municipal entity under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). *See Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012) (*Monell* framework applies to private company providing medical care at correctional facility). But a corporation "cannot be held liable under §

1983 on a *respondeat superior* theory." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005) (quotation omitted). Rather corporate liability exists only "when execution of a [corporation's] policy or custom . . . inflicts the injury." *Id.* As noted by the Seventh Circuit, "administrative convenience and cost may be, in appropriate circumstances, *permissible factors* for correctional systems to consider in making treatment decisions." *Roe v. Elyea*, 631 F.3d 843, 863 (7th Cir. 2011) (emphasis in original). The Constitution is only violated when those factors are considered "*to the exclusion of reasonable medical judgment* about inmate health." *Id.* (emphasis in original). Scruggs's proposed third amended complaint does not plausibly allege that Corizon had a policy that mandated cost savings over physician judgment in this case. And, the proposed third amended complaint does not plausibly allege that Dr. Shihadeh avoided diagnosing any serious medical condition to save money or that Scruggs was injured by a failure to diagnosis that condition. *See Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) (finding to survive dismissal, a complaint must state a claim for relief that is plausible on its face.). Therefore, the proposed third amended complaint also does not allege a claim against Corizon Medical Company.

Lastly, Scruggs has filed another motion for ruling. ECF 62. These motions are unhelpful, and he is again admonished to stop filing them.

For these reasons, the court:

(1) GRANTS Christopher L. Scruggs's Motion to Clarify (ECF 57);

(2) DENIES Christopher L. Scruggs's motion for leave to amend his complaint a third time (ECF 42);

8

(3) CLARIFIES that the second amended complaint (ECF 12) remains the operative complaint; and

(4) DENIES Scruggs's motion for ruling (ECF 62).

ENTERED:  July 9, 2021.

/s/   Philip P. Simon  
PHILIP P. SIMON, JUDGE  
UNITED STATES DISTRICT COURT